### FULKERSON et al. v. SHAFFER et al.

(Circuit Court of Appeals, Eighth Circuit. September 10, 1914.)

No. 4181.

1. BANKRUPTCY (§ 58*)—ACT OF BANKRUPTCY—PREFERENCES—CONVEYANCE TO HINDER AND DEFRAUD CREDITORS.

Where an alleged bankrupt, who was cashier and stockholder of an insolvent bank, while insolvent and subject to a double liability on his stock in the bank to the bank commissioner, after the bank had been taken possession of by the commissioner, executed a note for the full amount of such double liability, secured by a mortgage on nonexempt real property, with intent to prefer the commissioner over his other creditors, he thereby committed an act of bankruptcy, and was properly adjudicated a bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 57, 72–79, 83; Dec. Dig. § 58.*]

2. BANKRUPTCY (§ 58*)—PREFERENCES.

Under Bankr. Act July 1, 1898, c. 541, § 3a, 30 Stat. 546 (U. S. Comp. St. 1913, § 9587), providing that "acts of bankruptcy by a person shall consist of his having * * * (2) transferred, while insolvent, any portion of his property to one or more of his creditors with intent to prefer such creditors" over others, a transfer to a trustee for creditors will be treated as if made direct to the creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 57, 72–79, 83; Dec. Dig. § 58.*]

Appeal from the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Petition by A. H. Shaffer and others against Martin M. Fulkerson and others. From an order adjudging Fulkerson a bankrupt, he and J. D. Lankford, as Bank Commissioner, appeal. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Charles West, Atty. Gen., and Joseph L. Hull, Asst. Atty. Gen., of Oklahoma, for appellants.

G. H. Buckman, of Winfield, Kan., Sam K. Sullivan, of Newkirk, Okl., and S. C. Bloss, of Winfield, Kan., for appellees.

Before SANBORN and SMITH, Circuit Judges, and TRIEBER, District Judge.

SMITH, Circuit Judge. [1] A petition was filed in the District Court to have Martin M. Fulkerson adjudged an involuntary bankrupt. The petition contained the following:

"That within four months preceding the filing of this petition, viz., on the 9th day of August, 1913, the said Martin M. Fulkerson, while insolvent, committed an act of bankruptcy, in that he did on said date execute and deliver a certain mortgage deed to J. D. Lankford, bank commissioner of Oklahoma, and his assigns and legal representatives, wherein to secure the payment of a note for $13,900 of said date, due one year thereafter, he mortgaged the southwest quarter (S. W. ¼) of section nine (9), all in township twenty-seven (27), range fourteen (14) west, in Woods county, Oklahoma, subject only to a prior mortgage of $6,500; that said real estate above described was non-exempt, and was not transferred in the due course of business, and was not transferred for a valuable consideration, but that said transfer was made by the said Martin M. Fulkerson while insolvent as aforesaid, with intent to prefer the said J. D. Lankford, bank commissioner, over his other creditors, and with intent to hinder, delay, and defraud the creditors of the said Martin M. Fulkerson; that said real estate mortgage was filed for record in the office of the register of deeds of Woods county, state of Oklahoma, August 9, 1913, at the hour of 4:15 o'clock p. m."

Martin M. Fulkerson and J. D. Lankford, bank commissioner, both filed answers, admitting the execution of the mortgage to Lankford, bank commissioner, but denying any act of bankruptcy. The parties made an agreed statement of facts, upon which the case was submitted, and resulted in an adjudication of bankruptcy, from which Mr. Fulkerson and Mr. Lankford, bank commissioner, appeal.

It appears that Mr. Fulkerson was cashier and stockholder to the amount of $13,900 of the Alva Security Bank, a banking corporation of the state of Oklahoma, and on August 9, 1913, the bank commissioner of Oklahoma declared the bank insolvent and took possession thereof, and on the same day took the note and mortgage referred to in the petition in bankruptcy. Two days later, but in pursuance of an agreement made on August 9th, the acting bank commissioner made a contract with the Central State Bank of Alva that it should assume all the liabilities of the defunct Alva Security Bank in consideration of certain specified assets of the Alva Security Bank and $97,199.79 in state banking board warrants. Among other things the stipulation contained the following provision:

"Party of the first part also agrees to immediately deliver to the party of the second part one certain note and mortgage securing same of $13,900, signed by M. M. Fulkerson and Sara H. Fulkerson, and the same to be applied in the same manner as all other double liability assessments which are collected."

The statutes of Oklahoma provide for the appointment of one bank commissioner by the Governor, by and with the consent of the senate,

and the appointment of a number of assistants, and they also provide for the usual double liability of stockholders in banks; but this provision is not specific as to who shall collect such liability. All references to the Oklahoma statutes are to the Harris-Day Code.

Section 298 creates the state banking board. Section 299 provides for a depositors' guaranty fund by assessment on the banks of the state. Section 300 provides for replenishing the fund when depleted. Section 302 provides that, whenever the bank commissioner shall become satisfied of the insolvency of any bank, he may, after due examination of said bank and its assets, proceed to wind up its affairs and enforce the personal liability of the stockholders, officers, and directors. Section 303 provides that, in the event the bank commissioner takes possession of any bank, the depositors shall be paid in full, and when the cash available, or that can be made immediately available, is not sufficient, the said banking board shall draw from the depositors' guaranty fund and from additional assessments, if required, the amount necessary to make up the deficiency, and the state shall have, for the benefit of the depositors' guaranty fund, a first lien upon the assets of the bank and all liabilities against the stockholders, officers, and directors of said bank.

When this bank was taken possession of by the bank commissioner under section 302, he was authorized under the same section to collect the double liability of Fulkerson, and that liability and his other liabilities made him insolvent. Although his liability was under the statute of Oklahoma, it was contractual in character. Richmond v. Irons, 121 U. S. 27, 55, 7 Sup. Ct. 788, 30 L. Ed. 864; Stuart v. Hayden, 169 U. S. 1, 8, 18 Sup. Ct. 274, 42 L. Ed. 639; Matteson v. Dent, 176 U. S. 521, 20 Sup. Ct. 419, 44 L. Ed. 571. And his liability became fixed from the date of insolvency of the bank. Stuart v. Hayden, 169 U. S. 1, 8, 18 Sup. Ct. 274, 42 L. Ed. 639. But in this case Mr. Fulkerson settled all questions as to his liability by giving to the bank commissioner his note for the full amount of his double liability. This liability upon this note was clearly contractual, even if his liability had previously not been so. For what was this note given? It was in effect stated in the contract between the bank commissioner and the Central State Bank of Alva that it was given to represent his double liability. It is said that the—

"mortgage was given in consideration of Fulkerson's liability to the bank commissioner for advances to be made by him out of the depositors' guaranty fund to pay the depositors of the failed bank."

On the other hand, it is expressly agreed:

"That said bank commissioner demanded from said Fulkerson payment of his liability as stockholder, and said Fulkerson delivered, in compliance with said demand, said note and mortgage."

As the law provided for the double liability, and as section 302 clothes the bank commissioner with authority to enforce the liability, and he demanded its payment, and in compliance therewith Fulkerson gave the note and mortgage, there seems no basis for the claim that he gave it solely for his liability to the bank commissioner for ad-

vances to be made by him out of the depositors' guaranty fund which it was obligatory upon the state banking board to make under section 303. Nor does the fact that section 303 gave to the state, for the benefit of the depositors' guaranty fund, a first lien upon all liability against the stockholders, change this result, or make the transfer solely for the purpose claimed by appellants.

[2] Under the Oklahoma statute he owed Lankford, as bank commissioner; but, even if he did not, Lankford took the mortgage as trustee, and the giving of a mortgage to a trustee for a creditor, instead of direct to the creditor, cannot take it out of the plain terms of the bankruptcy statute, which are:

"Sec. 3.—a Acts of bankruptcy by a person shall consist of his having * * * (2) transferred, while insolvent, any portion of his property to one or more of his creditors with intent to prefer such creditors over his other creditors."

This is a proceeding in equity, and under this statute a transfer to a trustee for the creditors would be treated as if made direct to the creditors. If Fulkerson, to secure his double liability, upon which a cause of action had already accrued to the bank commissioner, gave this note and mortgage to secure such double liability, the mere fact that the state law gave a lien in favor of the state for the depositors' guaranty fund upon the double liability made the double liability no less a liability of Fulkerson, and if the mortgage was in part to secure the state for its advances it would none the less subject Fulkerson to be adjudged a bankrupt under the section quoted.

The appellants seem to, in a measure, treat this case as if it were an action under section 60, clauses "a" and "b," to recover the mortgaged property as given in preference and even if their theory were sustained, upon which we express no opinion, the creditors of Fulkerson would none the less be entitled to have him adjudicated a bankrupt, because, if it be conceded that there was some other consideration for the mortgage, it will not be claimed that it did not secure his double liability, which already existed. He had therefore committed an act of bankruptcy under the section of the bankruptcy law quoted, and the decree is affirmed.